RECORD NO. 14-1192

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

CLIVE C. PETTIS, SR.,

*Plaintiff - Appellant,*

v.

NOTTOWAY COUNTY SCHOOL BOARD;
DANIEL J. GROUNARD, Individually and in his official capacity
as Division Superintendent, Nottoway County Schools,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

## RESPONSE BRIEF OF APPELLEES

R. Craig Wood
Melissa Wolf Riley
MCGUIREWOODS LLP
Court Square Building
P.O. Box 1288
Charlottesville, VA 22902-1288
Telephone: (434) 977-2598
cwood@mcguirewoods.com
mriley@mcguirewoods.com

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1192__    Caption: Clive C. Pettis, Sr. v. Nottoway County School Board

Pursuant to FRAP 26.1 and Local Rule 26.1,

Nottoway County School Board
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

10/28/2013 SCC                          - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: __3/5/14__

Counsel for: __Nottoway County School Board__

## CERTIFICATE OF SERVICE
**************************

I certify that on ___March 5, 2014___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

JeRoyd W. Greene III, Esq. (VSB#39084)
Robinson & Greene
2415 Westwood Avenue
Richmond, VA 23230

_____          __3/5/14__
          (signature)                        (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATEMENT OF THE CASE.........................................................................1

I.     Procedural history ...........................................................................1

II.    Statement of Facts........................................................................3

SUMMARY OF ARGUMENT .......................................................13

ARGUMENT .................................................................................14

I.     Standard of Review.......................................................................14

II.    The School Parties' Summary Judgment Motion on Racial Discrimination Claims ......................................................15

     A.    Elements of Prima Facie Case of Race Discrimination ...................15

     B.    Pettis Failed to Establish the Satisfactory Performance Prong of his Prima Facie Case and Does Not Challenge that Finding on Appeal .......................................................................16

     C.    Pettis' Performance Clearly Failed to Meet his Employer's Legitimate Performance Expectations ...............................17

     D.    Pettis Cannot Demonstrate that Similarly Situated Employees Outside his Class Were Retained Under Similar Circumstances ................................................................19

III.    Pettis' Summary Judgment Motion on Racial Discrimination Claims..........24

IV.    Retaliation Claim.......................................................................25

i

V.    Motion to Amend or Alter Judgment ..............................................28

CONCLUSION ..................................................................................30

CERTIFICATE OF COMPLIANCE ....................................................31

CERTIFICATE OF SERVICE ............................................................32

## TABLE OF AUTHORITIES

### CASES

Page

*Beatty v. Thomas*,
 2005 U.S. Dist. LEXIS 25555 (E.D. Va. Oct. 24, 2005) ...............................29

*Blaustein & Reich, Inc. v. Buckles*,
 220 F. Supp. 2d 535 (E.D. Va. 2002), *aff'd*, 365 F.3d 281 (4th Cir.
 2004) .................................................................................................4, 6, 7, 8

*Brailey v. Advance America Cash Advance Centers*,
 2009 U.S. Dist. LEXIS 132419 (E.D. Va. 2009), *aff'd*, 379 Fed. Appx.
 298 (4th Cir. 2010) ........................................................................................19

*Brasic v. Heinemann's Inc.*,
 121 F.3d 281 (7th Cir. 1997) .........................................................................22

*Brinkley v. Harbour Rec. Club*,
 180 F.3d 598 (4th Cir. 1999) ...................................................................15, 16

*Campbell v. United States*,
 2011 U.S. Dist. LEXIS 36403 (E.D. Va. Mar. 31, 2011)...............................29

*Causey v. Balog*,
 162 F.3d 795 (4th Cir. 1998) .........................................................................26

*Coleman v. Maryland Ct. of Appeals*,
 626 F.3d 187 (4th Cir. 2010), *aff'd* 132 S. Ct. 1327 (2012) .....................15, 19

*Dowe v. Total Action Against Poverty*,
 145 F.3d 653 (4th Cir. 1998) .........................................................................26

*EEOC v. Clay Printing, Inc.*,
 955 F.2d 936 (4th Cir. 1992) .........................................................................21

*EEOC v. Navy Federal Credit Union*,
 424 F.3d 397 (4th Cir. 2005) ....................................................................25, 26

*Edell & Associates v. Law Offices of Peter G. Angelos*,
    264 F.3d 424 (4th Cir. 2001) ...........................................................22

*Elam v. Regions Finance Corp.*,
    601 F.3d 873 (8th Cir. 2010) ...........................................................21

*Felty v. Graves-Humphreys Co.*,
    818 F.2d 1126 (4th Cir. 1987) .........................................................14

*Harman v. Bunch*,
    2011 U.S. Dist. LEXIS 66235 (E.D. Va. June 16, 2011), *aff'd*, 462 Fed.
    Appx. 319 (4th Cir. Jan. 24, 2012), *cert. denied*, 133 S. Ct. 339 (2012) .........4

*Hooven-Lewis v. Caldera*,
    249 F.3d 259 (4th Cir. 2001) .....................................................26, 27

*Houck v. Virginia Polytechnic Institute*,
    10 F.3d 204 (4th Cir. 1993) .............................................................20

*Hutchinson v. Staton*,
    994 F.2d 1076 (4th Cir. 1993) .........................................................29

*Jafari v. Old Dominion Transit Management Co.*,
    913 F. Supp. 2d 217 (E.D. Va. 2012) ...............................................21

*Jones v. Calvert Group, Ltd.*,
    2010 U.S. Dist. LEXIS 127715 (D.Md. 2010) .................................17

*Keyes v. National R.R. Passenger Corp.*,
    766 F. Supp. 277 (E.D. Pa. 1991) ...................................................29

*King v. Rumsfeld*,
    328 F.3d 145 (4th Cir. 2003) ...........................................................17

*Kipp v. Missouri Highway & Trans. Commission*,
    280 F.3d 893 (8th Cir. 2002) ...........................................................22

*Knight v. Baptist Hospital of Miami, Inc.*,
    330 F.3d 1313 (11th Cir. 2003) .......................................................22

*Koenig v. McHugh*,
    2013 U.S. Dist. LEXIS 10810 (E.D. Va. 2013) .......................................27, 28

*Love-Lane v. Martin*,
    355 F.3d 766 (4th Cir. 2004) ...................................................................15

*Luther v. Gutierrez*,
    618 F. Supp. 2d 483 (E.D. Va. 2009) ...........................................................17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................................15

*Moser v. MCC Outdoor, LLC*,
    2007 U.S. App. LEXIS 28252 (4th Cir. Dec. 5, 2007) ....................................3

*Pacific Insurance Co. v. Amer. Nat. Fire Ins. Co.*,
    148 F.3d 396 (4th Cir. 1998) ...................................................................28, 29

*Reeves v. Sanderson Plumbing Products*,
    530 U.S. 133 (2000) ................................................................................22

*Robinson v. Wix Filtration Corp.*,
    599 F.3d 403 (4th Cir. 2010) ...................................................................15

*Sigma Chi Fraternity v. Patterson*,
    566 F.3d 138 (4th Cir. 2009) .....................................................................3

*Smith v. Donahoe*,
    917 F. Supp. 2d 562 (E.D. Va. 2013) ........................................................28, 29

*Smith v. Flax*,
    618 F.2d 1062 (4th Cir. 1980) ..................................................................17

*Swerdloff v. Green Spring Health Services*,
    1998 U.S. App. LEXIS 6604 (4th Cir. Apr. 2, 1998)....................................14

*United States v. Stevenson*,
    554 F.2d 123 (4th Cir. 1976) .....................................................................4

*United States v. Westinghouse Savannah River Co.*,
   305 F.3d 284 (4th Cir. 2002) ...........................................................................28

*Wallace v. Methodist Hospital*,
   271 F.3d 212 (5th Cir. 2001) ...........................................................................22

## STATUTES

42 U.S.C. § 1981 ...............................................................................................1, 2, 15

42 U.S.C. § 1983 ...............................................................................................1, 2, 15

Virginia Code § 18.2-152.4 ...............................................................................12

## RULES

E.D. Va. Loc. R. 56(B) .........................................................................................3

Fed. R. Civ. P. 59(e).................................................................................16, 28, 29

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Pettis has set forth six issues for review.  The first four issues, however, easily may be boiled down to one overarching issue:  Whether the district court erred in ruling that David Johnson was not an appropriate comparator for purposes of the discrimination claims.

## STATEMENT OF THE CASE

### I.    Procedural History

1.    On November 30, 2012, Pettis filed a Complaint against the Nottoway County School Board (the "School Board") and Daniel J. Grounard ("Dr. Grounard") in his individual and official capacity (the School Board and Dr. Grounard shall collectively be referred to herein as the "School Parties").  (J.A. 0004.)  On December 26, 2012, Pettis filed an Amended Complaint, which added the individual School Board members as defendants.  (J.A. 0013-0030.)  Pettis asserted claims under Title VII, § 1981 and § 1983 as well as a claim for denial of due process against all Defendants.  (*Id*.)  Specifically, Pettis alleged that the School Parties' decision not to renew his contract for the 2011-2012 school year formed the basis for his race discrimination, retaliation and due process claims. (*Id*.)

2.    The District Court entered an Order adopting the Report and Recommendation of Magistrate Judge David J. Novak on June 17, 2013,

dismissing the individual School Board members, the Title VII claims and the §
1981 and § 1983 official capacity claims against Dr. Grounard, and the due process
claim. (J.A. 0007) The remaining claims were Title VII, § 1981 and § 1983
claims against the School Board, and § 1981 and § 1983 claims against Dr.
Grounard in his individual capacity.

3.      On August 30, 2013, the School Board and Dr. Grounard filed a
Motion for Summary Judgment. (J.A. 0044-45.) Pettis also filed a Motion for
Summary Judgment on September 3, 2013. (J.A. 0046-0047.)

4.      On October 11, 2013, the district court entered an order granting
Defendants' Motion for Summary Judgment and denying Pettis' Motion for
Summary Judgment. (J.A. 0654.) A Memorandum Opinion regarding that order
was entered on November 1, 2013. (J.A. 0655-0674.)

5.      On November 25, 2013, Pettis filed a Motion to Alter or Amend
Judgment (J.A. 0675), which was denied by the district court by Memorandum
Order on February 7, 2014. (J.A. 0677-0680.)

6.      On February 27, 2014, Pettis filed a Notice of Appeal regarding the
summary judgment motions and the Motion to Amend or Alter Judgment. (J.A.
0681-0682).

II.    **Statement of Facts**

This Court's de novo review of the cross-motions for summary judgment requires an understanding of what facts the district court considered with respect to each motion.  The district court ruled that Pettis had failed to comply with Local Rule 56(B) in his opposition brief; therefore, the School Parties' facts were deemed admitted for purposes of their summary judgment motion.[1]  (J.A. 0657.)  Pettis has not challenged this ruling on appeal, and, therefore, this Court should accept the district court's ruling; however, if this Court does review the district court's ruling, it would apply an abuse of discretion standard.  *See Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) ("We review for abuse of discretion a district court's imposition of sanctions for a violation of the court's local rules."); *Moser v. MCC Outdoor, LLC*, 2007 U.S. App. LEXIS 28252, at **24 (4th Cir.

---

[1] Local Civil Rule 56(B) states:

> A brief in response to [a summary judgment] motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute.  In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. R. 56(B). While Pettis' brief contained a properly captioned section, he did not cite to the record when disputing the facts set forth in Defendants' Statement of Undisputed Facts as required by the Rule.  Instead, Pettis merely provided self-serving conclusions and objections.

Dec. 5, 2007) (unpub'd) ("We review the district court's application of its local rules for an abuse of discretion."); *see also United States v. Stevenson*, 554 F.2d 123, 126 (4th Cir. 1976).

The district court appropriately applied Local Rule 56(B) and its stated consequence for failure to abide by the rule. *See Harman v. Bunch*, 2011 U.S. Dist. LEXIS 66235, at *21-22 (E.D. Va. June 16, 2011) (unpub'd), *aff'd*, 462 Fed. Appx. 319 (4th Cir. Jan. 24, 2012), *cert. denied*, 133 S. Ct. 339 (2012); *Blaustein & Reich, Inc. v. Buckles*, 220 F. Supp. 2d 535, 539 (E.D. Va. 2002), *aff'd*, 365 F.3d 281 (4th Cir. 2004).

Therefore, for purposes of a review of the School Board and Dr. Grounard's summary judgment motion, the following unopposed material facts were and should continue to be deemed admitted:

1.    The School Board hired Pettis in 1993 as a Chief Technology Specialist.  (Exhibit 1 of Memorandum in Support of Defendants' Motion for Summary Judgment, ECF No. 35, hereinafter referred to as "ECF No. 35, Exh. ___.")  Although he held different job titles throughout his employment, at all times Pettis was assigned to the Technology Department, and was responsible to maintain and support the computers and audio-visual hardware at Nottoway Schools, including to resolve technology issues at Nottoway High School.  (ECF No. 35, Exh. 2, at 105-106.)

2. Pettis remained employed until June 2011. Throughout his employment, Pettis received a series of one-year contracts with no guarantee his contract would be renewed for any subsequent school year. (ECF No. 35, Exhs. 3, 4.)

3. Besides his technology role, Pettis also was employed at various times by the athletic department as an assistant football coach, assistant varsity basketball coach and head varsity basketball coach. (ECF No. 35, Exh. 5.)

4. In 2001, Dr. Gwen Edwards became the Superintendent of Nottoway County Schools, a position which she held until her retirement on June 30, 2007. (J.A. 0426.) During her tenure, Dr. Edwards had to deal with several disputes between Pettis and other employees, as well as issues with Pettis' performance. (ECF No. 35, Exhs. 7-11, 16-17, 19- 21, 23-24.)

5. On September 12, 2005, Dexter Payne, Pettis' direct supervisor, instructed all members of the Technology Team, including Pettis, to submit an application for an instructional license so that the Technology Team members could be licensed to teach. (ECF No. 35, Exh. 11.) Payne's instructions came from a directive issued by Dr. Edwards in response to changes in the state's requirements for schools to receive technology funding. (J.A. 0430.)

6. David Johnson, a member of the Technology Team, applied for and received a Provisional License, effective from July 1, 2005 to June 30, 2008. (ECF

No. 35, Exh. 12.)  Johnson obtained this Provisional License on November 14, 2008, two months after Payne instructed his department to submit an application for licensure.  (*Id.*)

7.    Pettis, however, had not submitted an application as of November 14, 2005.  (ECF No. 35, Exh. 11.)  Dr. Edwards gave Pettis until December 5, 2005 to submit his application.  (*Id.*)  Pettis stated that he did not intend to submit an application.  (ECF No. 35, Exh. 13.)  Eventually, Pettis changed his mind and complied with Dr. Edwards' directive and received a Provisional License on February 2, 2006.  (ECF No. 35, Exh. 14.)

8.    After receiving a Provisional License, Pettis went about obtaining a Professional License by taking additional classes.  Although these additional courses were not required by Dr. Edwards, the School Board nevertheless reimbursed Pettis for the tuition expense.  (ECF No. 35, Exh. 15.)

9.    In the Fall of 2006, Dr. Edwards and Anne Stinson, the principal at Nottoway High School, became concerned about the manner in which Pettis was conducting out-of-season practice for the boys' basketball team at the high school.  (ECF No. 35, Exhs. 16-19.)  Also during that Fall, administration observed many problems with technology at the schools serviced by Pettis.  (ECF No. 35, Exh. 20.)  Accordingly, on October 27, 2006, Dr. Edwards placed Pettis on a Plan of Action hoping that he would improve his performance.  (ECF No. 35, Exh. 21.)

6

10.    Instead of complying with this direction, Pettis filed an EEOC Charge complaining that the Plan of Action was in retaliation for having complained of discrimination relating to an incident with another employee regarding use of the school gym for athletic practices.  (ECF No. 35, Exh. 22.)  The EEOC never issued a determination or Right to Sue letter regarding this matter, and Pettis never pursued the matter.

11.    Upon Dr. Edwards' retirement, the School Board hired Dr. Daniel Grounard to replace her effective July 1, 2007.  (J.A. 0438-0439.)  Between July 1, 2007 and the end of the 2009-10 school year, there were no notable interventions by Dr. Grounard in respect to Pettis' performance.

12.    However, starting in the Fall of 2010, Dr. Grounard observed deterioration in Pettis' performance and willingness to accept direction.  For instance, on October 25, 2010, Dr. Grounard met with Pettis and Johnson, and asked them to show a new technology employee, James Pateras, around to familiarize him with the technology systems.  (J.A. 0461-0463.)  Dr. Grounard's instructions were "not ambiguous."  (J.A. 0463.)

13.    Johnson complied with these instructions.  (J.A. 0471-0473.)  Pettis, however, did not.  (J.A. 0473.)  Instead, Pettis complained that he did not want to "babysit" Pateras.  (*Id*.)  As a result, Dr. Grounard met with Pettis, Payne and Assistant Superintendent Roy Walton on November 8, 2010, regarding Pettis'

7

refusal to show Pateras around as instructed.  At that meeting, Pettis tried to deflect blame by stating that Payne had given him ambiguous instructions regarding the type of work he was to have Pateras handle.  (J.A. 0307-0308.).  However, Dr. Grounard pointed out to Pettis that *his* instructions were "not ambiguous."  (J.A. 0308, 0463, 0475.)   After this meeting, Dr. Grounard issued Pettis a written discipline for his failure to comply with Dr. Grounard's instructions.  (ECF No. 35, Exh. 27.)

14.    Along with Pettis' failure to comply with simple administrative directives, Dr. Grounard also received reports that teachers were being verbally harassed by Pettis.  (J.A. 0478-0479.)  Moreover, Dr. Grounard was receiving constant complaints from teachers at Nottoway High School regarding Pettis' attitude and performance.  (J.A. 0479, 0647.)  Pettis was also not being receptive to Payne's efforts to resolve these issues and belittled Payne's skills.  (*Id.*)  Dr. Grounard felt Pettis' conduct towards Payne was insubordinate, and gave Pettis a clear directive to cease being insubordinate.  (ECF No. 35, Exh. 27.)

15.    In March 2011, Dr. Grounard became aware of significant technology concerns and called for a Technology Team meeting for March 28, 2011 at 8:00 a.m.  (J.A. 0056.)  In response, Pettis stated his work hours were from 8:30 a.m. to 4:30 p.m.  (*Id.*)  Pettis did not provide any explanation at that time as to why he could not make the meeting as instructed by the Superintendent, other than that the

meeting was outside his work hours. (J.A. 0529-0530.) As a result, Dr. Grounard issued Pettis a written disciplinary notice. (ECF No. 35, Exh. 28.)

16. Needing to address Pettis' inappropriate and curt response to the meeting request and his deteriorating attitude and performance, Dr. Grounard scheduled a meeting with Pettis for March 28, 2011. (ECF No. 35, Exh. 29.) During that meeting, Dr. Grounard observed that Pettis was tape-recording the discussion. (*Id.*) As a result, Dr. Grounard ended the meeting. (*Id.*). Dr. Grounard and Walton both found Pettis' actions unprofessional, as he never asked for permission nor announced that he would be recording the meeting, and they believed his actions showed distrust and disrespect of his superiors. (*Id.*; *see also* J.A. 0384, 0569-0579.)

17. On April 11, 2011, a meeting was held between Pettis, Walton, Payne and Stinson to discuss: (1) the myriad of technology issues at the high school; and (2) Pettis' rude behavior towards a guidance counselor in front of a student. (ECF No. 35, Exh. 30; J.A. 0338-0339.) During that meeting, Walton, Payne and Stinson brought up many complaints that teachers had expressed regarding Pettis' performance. In response, Pettis tried to deflect all blame to other members of the Technology Team and refused to take responsibility for any of the technology problems. (J.A. 0338-0339.) Pettis also denied being rude to the guidance counselor. (J.A. 0345-0346.)

18.    Despite the litany of employees who had experienced unprofessional behavior and other difficulties when interacting with him, Pettis refused to engage in dialogue on how he could improve his performance and communication skills. Walton, who had attempted to mentor Pettis as a fellow African-American, testified that Pettis "is not the easiest person to communicate with.  I think a lot of the issues that have come about in regards to his job performance are because of communications issues."  (J.A. 0327.)

19.    Instead of trying to improve his performance and communication skills, Pettis continued to provide repeated denials and attempts to shift all blame onto other employees.   (ECF No. 35, Exh. 31.)   None of Pettis' responses, however, point to any racial animus on the part of any School Board employee, including Payne, Walton, or Dr. Grounard.  (*Id*.)  Instead, they merely show that Pettis asserted harassment or unfair treatment anytime anyone dared to critique his work performance or complain about personal interactions with him, rather than addressing his underlying behavior.  (*Id*.)

20.    Pettis' complaints amounted to nothing more than unsubstantiated assertions that the many School Board employees with whom he clashed were "out to get him," and that these employees falsified each and every situation described above.  For instance, Pettis alleged that his direct supervisor, Payne, held a grudge against him.  (J.A. 0328-0330.)   However, as Walton testified, the factors that

10

affected the relationship between Pettis and Payne were completely unrelated to race; instead the tension was in response to Pettis' disrespectful behavior towards Payne. "I think it truly was a lack of respect that Mr. Pettis had for Mr. Payne's knowledge of technology." (J.A. 0329.) Moreover, Pettis "more or less ridiculed some of the decisions" made by Payne. (J.A. 0330.)

21.    Due solely to Pettis' poor performance and unprofessional conduct, Dr. Grounard decided to recommend to the School Board that Pettis' contract not be renewed after the 2010-11 school year. (J.A. 0587-0588, 0628; ECF No. 35, Exh. 32.) On May 12, 2011, the Board adopted Dr. Grounard's recommendation. (ECF No. 35, Exh. 33.)

The following additional undisputed facts were set forth by Pettis in support of his summary judgment motion and/or his opening brief before this Court:

22.    In 2007, Johnson, who is Caucasian, was subject to discipline by Dr. Grounard for accessing an e-mail account used by his ex-wife, also a School Board employee. [2] (J.A. 0049.) When Johnson challenged that disciplinary action, Dr.

---

[2] Appellees dispute the facts as set forth on page 7 of Pettis' opening brief, because Johnson denied reading or deleting those e-mails, but instead testified that he merely accessed the account (which he claimed to own because he had set it up for her during their marriage) and changed the password. (J.A. 102-108.)

Grounard responded in writing, setting forth expectations for Johnson's behavior going forward, and outlining additional performance issues.[3] (J.A. 0065.)

23.    When asked why he did not terminate Johnson for this conduct, Dr. Grounard replied, "I gave him an opportunity. I warned him. He was written up. Had I had another incident, he would have been terminated. There hadn't been a history prior or … afterwards." (J.A. 0607.)

24.    Four years later, in 2011, Johnson and Payne became involved in a heated conversation. Although Pettis alleges that Johnson cursed at Payne (relying only on an unverified allegation in his amended complaint; *see* Opening Br. at 10), Johnson specifically denied cursing at Payne, (J.A. 0098), and instead says that he called Payne a "liar," and said Payne could fire him. (*Id.*) Johnson apologized to Payne the next day for his behavior, and Payne told him that if he did it again he would be reprimanded or fired. (J.A. 0099.) No further action was taken regarding this isolated incident. (J.A. 0101.)[4]

---

[3] Throughout this matter, Pettis has gone to great lengths to argue that Johnson's conduct was a violation of Virginia Code § 18.2-152.4. (*See* Opening Br. at 8.) Nowhere is it established, however, that Johnson did not have authority to access the e-mail account that he set up and to which he had administrative privileges. This legal conclusion by Pettis is therefore in dispute, and should not be considered by this Court.

[4] Pettis inaccurately argues that Johnson, Payne, and Grounard met to discuss this incident. However, the portion of the record cited to (J.A. 0100-0102) does not ask specifically about *this particular* incident, but whether "any letters were put in [his] employment file." (J.A. 0100.) Instead, Johnson testified that he had no "conversations with Dr. Grounard regarding this particular incident." (J.A. 0101.)

25.    Dr. Grounard and Walton were unaware of the incident between Payne and Johnson. (J.A. 0398, 0594-0595.)

## SUMMARY OF THE ARGUMENT

Pettis' challenge to the district court's summary judgment rulings must be summarily dismissed, because he challenges very specific portions of those rulings, while completely ignoring other aspects of the ruling that would nonetheless lead to affirmation of the district court's ruling. Specifically, Pettis does not challenge the determination that he failed to demonstrate that at the time of his termination, his performance met the legitimate expectations of his employer. Thus, even on appeal, Pettis cannot state a prima facie case of race discrimination. Even were the Court to consider his appeal sufficiently broad to encompass a review of that determination, the facts clearly establish that he was not meeting performance expectations, nor was he treated differently than a similarly situated employee. Therefore, he cannot establish a prima facie case of race discrimination, and the district court's ruling must be upheld.

The appeal regarding Pettis' retaliation claim also must fail because he cannot set forth a prima facie case of retaliation. Specifically, he cannot demonstrate that he engaged in protected activity, because his EEOC charge was too far removed in time and in context from his termination. Moreover, his vague allegations that the disciplinary actions taken against him constitute "harassment"

13

do not amount to protected activity, because he could not have reasonably believed that such actions were discriminatory.

Finally, for all the reasons set forth regarding the summary judgment claims, Pettis cannot demonstrate that the district court's ruling on his Motion to Alter or Amend Judgment constituted an abuse of discretion; therefore that ruling must be upheld by this Court.

<u>**ARGUMENT**</u>

**I.**    <u>**Standard of Review**</u>

The Fourth Circuit reviews grants of summary judgment de novo, applying the same standards as applied by the district court. *Swerdloff v. Green Spring Health Servs.*, 1998 U.S. App. LEXIS 6604, at 1-5 (4th Cir. Apr. 2, 1998), *citing Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1127-28 (4th Cir. 1987). Therefore, this standard of review should apply to Pettis' first five issues on appeal. As stated in the fact section, however, an abuse of discretion standard applies to review of the district court's ruling that the School Parties' facts were deemed admitted pursuant to the Local Rules of the Eastern District of Virginia. (*See* pp. 3-4, *supra*.)

Pettis' sixth issue on appeal, the district court's denial of Pettis' motion to alter or amend judgment, also is reviewed using the more deferential abuse of

discretion standard. *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010).

## II.    The School Parties' Summary Judgment Motion on Racial Discrimination Claims

### A.    Elements of Prima Facie Case of Race Discrimination

In order to establish a prima facie case of race discrimination in the absence of direct or indirect evidence[5] under Title VII, § 1981, or § 1983,[6] Pettis must establish an inference of discriminatory intent using the *McDonnell Douglas* burden-shifting scheme. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden is first upon Pettis to demonstrate (1) he belongs to a protected class; (2) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; (3) he suffered an adverse employment action; and (4) similar employees outside of his class were treated more favorably under similar circumstances. *See Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd* 132 S. Ct. 1327 (2012). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 607 (4th Cir. 1999). If the employer makes this showing, then the

---

[5] The district court ruled, and Pettis does not contest, that Pettis has offered no direct or indirect evidence of discriminatory purpose. (J.A. 0663.)

[6] The elements of a discrimination claim are identical under all three statutes. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

employee must carry the ultimate burden of providing discrimination by a preponderance of the evidence. *See id.*

**B.     Pettis Failed to Establish the Satisfactory Performance Prong of his Prima Facie Case and Does Not Challenge that Finding on Appeal**

Both parties agree that Pettis satisfies the first and third prongs of the prima facie case. Furthermore, Pettis does not contest that he was *unable* to satisfy the second prong, which proved fatal to his claim. The district court ruled that Pettis was not meeting his employer's legitimate expectations, and therefore could not satisfy the second prong of the prima facie case. (J.A. 0665.) Pettis did not challenge this portion of the district court's opinion, either in his Rule 59(e) motion (*see* Pettis' Mem. In Supp. of Mot. to Alter or Amend Judgment, ECF No. 67), or in his statement of issues presented for review (*see* Opening Br. at 4-5). As a result, this Court need not even get to the merits of Pettis' appeal, because all of his arguments concerning whether Johnson is an appropriate comparator make no difference if he cannot *first* establish that he was meeting his employer's legitimate performance expectations. As Pettis has not challenged the lower court's ruling in this regard, his appeal should be summarily dismissed and the lower court's rulings affirmed.

C.    **Pettis' Performance Clearly Failed to Meet his Employer's Legitimate Performance Expectations**

Even were this Court to review the merits of the district court's summary judgment ruling, the record is replete with proof of Pettis' deficient job performance.   In determining whether Pettis was performing his duties satisfactorily, "[i]t is the perception of the decision maker which is relevant," *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980); Pettis' own perception of his performance is irrelevant.   *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *see also Jones v. Calvert Group, Ltd.*, 2010 U.S. Dist. LEXIS 127715, at *17-18 (D.Md. 2010).

Pettis may establish that he was meeting Defendants' expectations by providing: (1) concessions that he was performing satisfactorily at the time his contract was not renewed; (2) evidence of prior positive performance reviews from Defendants; or (3) qualified expert opinion testimony as to the employer's legitimate performance expectations and an analysis and evaluation of Pettis' performance in light of those expectations.   *See King*, 328 F.3d at 149-50; *Calvert Group, Ltd.*, 2010 U.S. Dist. LEXIS 127715, at *17-18; *but see Luther v. Gutierrez*, 618 F. Supp. 2d 483, 492 (E.D. Va. 2009) (holding that prior positive performance evaluations are not dispositive as to whether the employer was satisfied with the employee's performance by the time of the termination).

17

Here, the undisputed record demonstrates that Pettis cannot establish that he performed his duties in a manner that met legitimate expectations. First, he can point to no concession that he was performing satisfactorily at the time of his termination. Instead, Dr. Grounard, Dr. Walton and other School Board employees stated just the opposite. (*See* Statement of Facts, *supra*, at ¶¶ 4, 7, 9, 10, 13-19.) Next, Pettis cannot point to positive performance reviews near the time his contract was not renewed, as Pettis' only recent evaluation noted several areas in which he needed improvement. (*See* Pettis Revised Memo. in Supp. of Mot. for Summ. Judg.; ECF No. 41, at Exh. 4.) Finally, Pettis has not offered any expert opinion to bolster his view of his performance.

The undisputed record sets forth repeated examples of Pettis' failure to follow the most basic instructions from his superiors along with numerous complaints that technology issues were not completely resolved. In 2010-2011 alone, Pettis: (1) ignored a clear directive from Dr. Grounard to show a new technology employee around to familiarize him with the systems; (2) provided a curt, inappropriate response to Dr. Grounard's valid meeting request; (3) was rude to a guidance counselor in front of a student; and (4) failed to fix many technology issues at Nottoway High School. (*See* Statement of Facts, *supra* at ¶¶ 13-19.) As such, the multiple write-ups for insubordination and poor performance demonstrate that Pettis cannot establish the third element of his prima facie case, and, therefore,

18

the dismissal of his claim should be upheld. *See Brailey v. Advance America Cash Advance Centers*, 2009 U.S. Dist. LEXIS 132419, at *20-21 (E.D. Va. 2009) (holding an employee who had multiple infractions and written disciplinary reports close in time to termination did not meet his burden to prove that he performed his duties in a manner that met his employer's legitimate expectations), *aff'd*, 379 Fed. Appx. 298 (4th Cir. 2010).

### D.   Pettis Cannot Demonstrate that Similarly Situated Employees Outside his Class Were Retained Under Similar Circumstances

Even were this Court to find that Pettis had established the second prong of the prima facie case, his case would still fail because he cannot establish the fourth prong, the basket in which he appears to be placing all of his eggs.[7]  The fourth prong of a prima facie case requires Pettis to demonstrate that similar employees outside of his class were treated more favorably under similar circumstances. *Coleman*,  626 F.3d at 190.

Pettis relies solely on David Johnson as a comparator.  Johnson was subject to discipline by Dr. Grounard for an incident involving his ex-wife in 2007.  (J.A. 0049, 0065.)  Then in 2011, Payne and Johnson exchanged words in a single isolated incident, resulting in a verbal warning to Johnson by Payne. (J.A. 0099.) Dr. Grounard had no knowledge of this incident, as Payne resolved it satisfactorily

---

[7] The district court appropriately declined to engage in this analysis, as Pettis failed to satisfy the second prong of the framework.  (J.A. 0670 at n.8.).

at his level. (J.A. 0594-0595.) Pettis argues that the district court erred by concluding that Pettis and Johnson's conduct differed in a number of significant and material respects, and that Dr. Grounard was unaware of the 2011 incident between Johnson and Payne. (*See* Opening Br. at 4-5.)

Regarding Johnson's conduct, Pettis argues that the district court failed to consider other incidents of misconduct that were pointed out to Johnson in the letter of reprimand he received in 2007 regarding the incident with his wife. (*See* Opening Br. at 17.) Pettis is asking the Court to make a decision as to whose conduct was worse. Fourth Circuit precedent simply does not allow this sort of comparison. *See Houck v. Virginia Polytechnic Institute*, 10 F.3d 204, 207 (4th Cir. 1993) (holding that "isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a prima facie inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to the entire relevant group of employees").

Pettis also argues that Johnson's conduct in 2007 was far more egregious than Pettis', because it was "motivated by negative racial animus." (*See* Opening Br. at 17-18.) This racial animus he is alleging is not that of Dr. Grounard, but that of Johnson, who apparently was upset his ex-wife was dating an African-American. He appears to argue that, therefore, Dr. Grounard should have fired Johnson in 2007. Courts in the Fourth Circuit consistently reject this argument,

20

recognizing that they do not sit as super-personnel departments evaluating whether every decision made by an employer was the best of all decisions. *See, e.g.*, *Jafari v. Old Dominion Transit Mgmt. Co.*, 913 F. Supp. 2d 217, 229 (E.D. Va. 2012) (holding that the Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination," and that "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the . . . termination"), *quoting EEOC v. Clay Printing, Inc.*, 955 F.2d 936, 946 (4th Cir. 1992) ("It is not for this court . . . to direct the business practices of any company.").

Pettis next argues that the district court erred by concluding that Dr. Grounard was unaware of the 2011 incident between Johnson and Payne. (*See* Opening Br. at 19-21.) Dr. Grounard testified that he did not recall hearing anything about this incident. (J.A. 0594-0595.) If Dr. Grounard, who is indisputably the decision maker in this case, had no knowledge of an event that Pettis attempts to compare to his own conduct, then the conduct may not be used to demonstrate disparate treatment by Dr. Grounard. An employee who allegedly engaged in misconduct comparable to that of Pettis' is not "similarly situated" to Pettis when the decision maker is unaware of the conduct of the comparator employee. *See, e.g.*, *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 881 (8th Cir.

2010); *Wallace v. Methodist Hosp*., 271 F.3d 212, 221 (5th Cir. 2001); *Brasic v. Heinemann's Inc*., 121 F.3d 281, 286 (7th Cir. 1997); *accord Knight v. Baptist Hosp. of Miami, Inc*., 330 F.3d 1313, 1317 n.5 (11th Cir. 2003); *Kipp v. Missouri Highway & Trans. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002).

Pettis attempts to throw doubt on Dr. Grounard's testimony by arguing that his deposition responses regarding his lack of knowledge of the incident demonstrated uncertainty, which would require the Court to make a speculative and impermissible credibility assessment in order to conclude that Grounard was in fact aware of the incident. (*See* Opening Br. at 20-21.) However, Pettis fails to acknowledge that no credibility assessment by the Court is required when the testimony is unrebutted. *See Edell & Assocs. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 435-436 (4th Cir. 2001) (Court "should give credence to the evidence favoring the non-movant as well as that evidence supporting the moving party *that is uncontradicted and unimpeached*, at least to the extent that the evidence comes from disinterested witnesses.")(emphasis added), *quoting Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000). Dr. Grounard said he "did not recall" being told of the 2011 incident; that is not a contradictory statement, however, and is not evidence nor may it be inferred that Dr. Grounard did indeed know of the incident. The Court is therefore entitled to rely on Dr. Grounard's testimony without making an assessment of his credibility. Dr.

Grounard's position that he was unaware of this incident is supported by the fact that Walton, Payne's supervisor, and the person who stood between Payne and Dr. Grounard in the reporting structure, also did not have knowledge of it.  (J.A. 0398.)

In offering up Johnson as a comparator, Pettis has presented only a single write-up (in 2007) and the 2011 incident of which neither Dr. Grounard nor Walton had knowledge.  (J.A. 0594-0596.)  The undisputed record shows that Johnson did not engage in that conduct again.  (J.A. 0135, 0606-0607.)  On the other hand, Pettis was repeatedly warned and disciplined for on-going insubordinate behavior, poor performance and improper communications with co-workers, including multiple instances in 2005 and 2006.  (*See* Statement of Facts, *supra,* at ¶¶ 4, 7, 9, 10.)  In July 2010, Pettis received a performance review that counseled him to show immediate improvement in the following areas: (1) maintain positive rapport with administrators/staff; and (2) listen to and communicate regularly with others; the same problems he had manifested in 2005 and 2006.  (*See* ECF No. 41, Exh. 4.)  Despite this guidance, Pettis continued to fail to meet his employer's expectations during the 2010-2011 school year as set forth in the facts.  (*See* Statement of Facts, *supra*, at ¶¶ 13-16, 18.)

Pettis received several counselings and warnings regarding his misconduct – including clear guidance in his performance review as to which specific areas of his performance he needed to improve.   Unlike Johnson, who corrected his

behavior in response to a warning, Pettis did not heed these warnings, but continued his insubordinate behavior and mistreatment of co-workers. Therefore, Pettis and Johnson are remarkably different, not similarly-situated, and Pettis' reliance on the decision to discipline but not terminate Johnson's employment in 2007 for an isolated event does not show disparate treatment. Instead, it simply reflects the significant disparity in the severity and pervasiveness of the two employees' behavioral issues that was properly weighed by the employer.

Pettis cannot satisfy the fourth prong of the *McDonnell Douglas* prima facie case; therefore, summary judgment in favor of Dr. Grounard and the School Board must be affirmed.

## III.   <u>Pettis' Summary Judgment Motion on Racial Discrimination Claims</u>

The same principles that require affirmation of the decision granting the School Parties' summary judgment motion also require affirmation of the district court's denial of Pettis' summary judgment motion. Again, Pettis presented no evidence demonstrating that he was meeting his employer's legitimate performance expectations. Furthermore, he has not demonstrated that a similarly situated employee was treated differently. As a result, this Court should affirm the denial of Pettis' motion for summary judgment.

## IV.    Retaliation Claim

Pettis also alleged a claim for retaliation based on his 2006 EEOC charge, and his vague complaints of harassment. (J.A. 0027-0028.) Specifically, Pettis alleges that Dr. Grounard decided not to renew his contract "because he had filed an earlier EEOC complaint" and for "complaining of being harassed and disciplined." (J.A. 0027.) Pettis' retaliation allegations do not state a prima facie case for retaliation. Initially, the EEOC charge he refers to was filed over four years prior to the decision not to renew his termination and was filed against a different administration – thus negating any causal connection. Moreover, the undisputed record demonstrates that the School Parties' repeated disciplinary actions toward Pettis were completely unrelated to race, and Pettis' complaints about such discipline do not amount to a protected activity as he could not have *reasonably* believed those disciplinary methods violated federal anti-discrimination law.

Under the *McDonnell Douglas* burden-shifting framework, Pettis has the initial burden to establish a prima facie case of retaliation by showing that: (1) he engaged in a protected activity; (2) Defendants took an adverse employment action against him; and (3) there was a causal link between the two events. *See EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405-06 (4th Cir. 2005). If Pettis establishes his prima facie case, the burden of production shifts to the School

Parties to articulate a legitimate, non-retaliatory justification for not renewing Pettis' contract. *Id.* at 405. Once the School Parties meet their burden, Pettis then has the burden to demonstrate that the stated reason is pretext. *Id.*

Pettis cannot make out a prima facie case of retaliation as there simply is no causal connection between Pettis' alleged protected activity (the prior EEOC Charge) and the adverse action (the decision not to renew his contract). As the Fourth Circuit has pointed out, "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (overruled as to the definition of protected activity but not as to the issue of causal connection). As to what constitutes a "lengthy time lapse," the Fourth Circuit has held that a period as little as six months "is sufficient to negate any inference of causation." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001); *see also Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (holding that thirteen months negates causation); *Dowe*, 145 F.3d at 657 (three years negates causation).

Here, over four years elapsed between the protected activity and the alleged adverse employment action, and a complete change in the senior administrative leadership from Dr. Edwards and her team to Dr. Grounard and Dr. Walton. Then, over four years later, and for myriad performance reasons, Dr. Grounard made the

decision to recommend to the School Board not to renew Pettis' contract. (*See* Statement of Facts, *supra*, at ¶ 21.) As such, the more than four year lapse in time bolstered by the circumstances demonstrates how Pettis cannot establish the requisite causal connection between his prior EEOC charge and the decision not to renew his contract. *See Hooven-Lewis*, 249 F.3d at 278.

Similarly, Pettis cannot meet his prima facie burden with regards to his complaints concerning Dr. Grounard's many efforts to counsel Pettis on his poor performance and hostile interactions with co-workers. Pettis' complaints are "inadequate as a matter of law for [Pettis] to have reasonably believed that [he] was being subjected to racially [disparate treatment]." *Koenig v. McHugh*, 2013 U.S. Dist. LEXIS 10810, at *29-30 (E.D. Va. 2013). None of the meetings, write-ups and communications regarding Pettis' poor performance, insubordination and inappropriate conduct towards others pertained to his race. (*See* Statement of Facts, *supra* at ¶¶ 4, 7, 9, 10, 13-20.) Instead, the meetings, write-ups and communications were entirely focused on the working relationship Pettis had with his supervisors and co-workers and with his technology performance. *Id.* Not even Pettis, in his responses to the various disciplinary actions, mentioned race as a factor; instead he just made vague allegations of "harassment" by Payne. (J.A. 0057.) Given that there is no basis upon which a reasonable person could form a reasonable belief that Defendants' conduct gave rise to a Title VII violation, Pettis'

complaints do not constitute protected activity and he cannot establish the first element required to prevail on his retaliation claim. *See Koening*, 2013 U.S. Dist. LEXIS 10810, at *30.

Pettis' one-page argument challenging the district court's finding on his retaliation claim does nothing to address the deficiencies in his claim. He cannot establish that he engaged in protective activity in a time period relevant to the 2011 decision not to renew his contract. As a result, this Court should affirm the district court's ruling on the retaliation claim.

## V.   Motion to Amend or Alter Judgment

A Rule 59(e) motion is "an extraordinary remedy which should be used sparingly." *Pacific Ins. Co. v. American Nat'l Fire Ins. Co*., 148 F.3d 396, 403 (4th Cir. 1998). The order of the district court granting summary judgment should not be overturned if it "was legally correct and did not work a manifest injustice." *United States v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002).

"A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motions should not be used 'to raise arguments which could have been raised prior to the issuance of the judgment.'" *Smith v. Donahoe*, 917 F. Supp. 2d 562, 572 (E.D. Va. 2013), *citing Pacific Ins.*, 148 F.3d at 403. Furthermore, "Rule 59(e) motions are not a tool with which an unsuccessful party

may 'rehash' the same arguments and facts previously presented." *Beatty v. Thomas*, 2005 U.S. Dist. LEXIS 25555, at *4 (E.D. Va. Oct. 24, 2005) (unpub'd), *quoting Keyes v. National R.R. Passenger Corp*., 766 F. Supp. 277, 280, 281 (E.D. Pa. 1991). "Disagreement with the manner in which a court applies a legal standard to the facts of a given case does not constitute clear legal error remediable by Rule 59(e)." *Campbell v. United States*, 2011 U.S. Dist. LEXIS 36403, at *5 (E.D. Va. Mar. 31, 2011) (unpub'd), *citing Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Pettis' Rule 59(e) motion is nothing more than a disagreement with the findings of the district court in its ruling on cross-motions for summary judgment. All of the issues raised in this motion were fully briefed by the parties in their summary judgment submissions.  In such a situation, "[t]he proper avenue for contesting the dismissal . . . is to appeal the decision to the United States Court of Appeals for the Fourth Circuit by filing a notice of appeal . . . ." *Smith*, 917 F.Supp. at 562.

The district court's decision to deny Pettis' efforts to rehash his summary judgment arguments was not an abuse of discretion.  Therefore, this Court should affirm the district court's denial of this motion.

## <u>CONCLUSION</u>

For these reasons, Nottoway County School Board and Daniel J. Grounard respectfully request that this Court affirm the district court's judgment dismissing all claims asserted by Clive Pettis, Sr.

Respectfully submitted,

s/ Melissa Wolf Riley

R. Craig Wood, Esq. (VSB #:  24264)
Melissa Wolf Riley, Esq. (VSB #:  43316)
McGuireWoods LLP
310 Fourth Street, NE., Suite 300
P. O. Box 1288
Charlottesville, VA  22902
(434) 977-2558
(434) 980-2274 (Facsimile)
cwood@mcguirewoods.com
mriley@mcguirewoods.com

*Counsel for Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. Rule 32, the undersigned counsel for Appellee certifies that the foregoing Brief of Appellee complies with the type-volume and typeface requirements of Fed. R. App. P. 32(a)(7)(B) and 32(a)(5-6).

1.     The brief complies with the type-volume of Fed. R. App. P. 32(a)(7)(B) because it contains 6,631 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman font on Microsoft Word 2010.


<u>s/ Melissa Wolf Riley</u>

*Attorney for Appellee*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on May 15, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

s/ Melissa Wolf Riley

*Attorney for Appellee*